UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal Nos.: 1:11-CR-361 and 1:12-CR-9 |
| v. | (Judge Conner) |
| **TRISTAN GREEN**, Defendant. | (electronically filed) |

**Government's Response to Defendant's Motion
<u>to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)</u>**

Defendant, Tristan Green, has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying on the general threat posed by the COVID-19 pandemic. The motion is baseless, without merit, wholly frivolous and represents significant deficiencies in our legal system, which allows defendants to attempt to take advantage of the legal process.

The United States respectfully opposes the motion. This Court should deny the motion with prejudice because Green, who tested positive for the COVID-19 virus and medical records show has only had "mild chest congestion" and otherwise is asymptomatic (Ex. 1, pp. 1 and

2), has not met his burden of establishing that a sentence reduction is warranted under the statute.  Further, Green was offered the COVID-19 Moderna vaccine and refused.  (Ex. 1, p. 44).  Indeed, it is difficult to conceive how Green can represent to the Court that his grounds supporting a sentence reduction "can only be described as 'extraordinary and compelling'" when he contracted the virus, didn't even know he had the virus, is afebrile (no fever) and his only symptom is "mild chest congestion."  Ex. 1, p.1.[1]

## Factual Background

On April 8, 2013, Green was convicted of Bank Robbery by Force or Violence (Count 1) and Use of a Firearm During a Crime of Violence (Count 2).  Doc. 170.  The Court sentenced Green to 276 months of imprisonment on Count 1 and 84 months of imprisonment on Count 2, consecutive to Count 1.  Doc. 170.  On May 30, 2013, Green was

---

[1] Green filed his motions (2) for compassionate release with the Court on January 19, 2021 (1:12-CR-00009, Doc. 440 and 1:11-CR-0361, Doc. 270), which was before testing positive for COVID-19 on January 21, 2021 and being asymptomatic other than "mild chest congestion." Ex. 1, p.1.

convicted of Armed Bank Robbery (Counts 1, 3 and 5 of the Superseding Indictment) and Use of a Firearm During a Crime of Violence (Counts 2, 4 and 6 of the Superseding Indictment).  Doc. 226.  Green was sentenced to 130 months on each of Counts 1, 3 and 5 to be served concurrently and a sentence of 300 months on Counts 2, 4 and 6 to be served consecutively to each other and all other terms of imprisonment, totally 1030 months' imprisonment.  Doc. 226.   To date, Green has served only approximately 97 months or a mere 6% of his 1,390-month combined sentence.  He now moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP), relying on the threat posed by the COVID-19 pandemic, despite already testing positive for the virus and being asymptomatic but for "mild chest congestion."  Ex. 1, p.1.

## I.   BOP's Response to the COVID-19 Pandemic.

As this Court is aware, COVID-19 is a dangerous illness that has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a multi-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

4

On March 13, 2020, BOP began to modify its operations, in
accordance with its Coronavirus (COVID-19) Action Plan ("Action
Plan"), to minimize the risk of COVID-19 transmission into and inside
its facilities. Since that time, as events require, BOP has repeatedly
revised the Action Plan to address the crisis.

Further details and updates of BOP's modified operations are
available to the public on the BOP website at a regularly updated
resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and
assist inmates who are most vulnerable to the disease and pose the
least threat to the community, BOP is exercising greater authority to
designate inmates for home confinement. On March 26, 2020, the
Attorney General directed the Director of the Bureau of Prisons, upon
considering the totality of the circumstances concerning each inmate, to
prioritize the use of statutory authority to place prisoners in home
confinement. That authority includes the ability to place an inmate in
home confinement during the last six months or 10% of a sentence,
whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home

confinement those elderly and terminally ill inmates specified in 34

U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility

to respond to the pandemic. Under the Coronavirus Aid, Relief, and

Economic Security Act, enacted on March 27, 2020, BOP may "lengthen

the maximum amount of time for which the Director is authorized to

place a prisoner in home confinement" if the Attorney General finds

that emergency conditions will materially affect the functioning of BOP.

Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at

18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the

Director of BOP the authority to exercise this discretion, beginning at

the facilities that thus far have seen the greatest incidence of

coronavirus transmission.  As of this filing, from March 26, 2020 to the

present, BOP has transferred 20,664 inmates to home confinement.

Federal Bureau of Prisons, *COVID-19 Home Confinement Information*,

*at* https://www.bop.gov/coronavirus/index.jsp.

Taken together, all of these measures are designed to mitigate

sharply the risks of COVID-19 transmission in a BOP institution. BOP

has pledged to continue monitoring the pandemic and to adjust its

practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately, and inevitably, some inmates, like Green, have tested positive for COVID-19, and more likely will in the weeks ahead. But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time

that the Probation Office has necessarily cut back on home visits and supervision).

Additionally, the BOP began vaccinating inmates in December 2020.  https://www.bop.gov/resources/news/20210116_covid _vaccine_efforts_commended.jsp.  Lewisburg received 400 doses of the COVID-19 Modern vaccine on January 25, 2021.  On January 21, 2021, staff was in Green's housing unit offering inmates the vaccine in preparation for the shipment.  Part of the screening for the vaccine is asking inmates if they are sick. Green told staff he wasn't feeling sick and refused the vaccine.  Ex. 1, p. 44.  As staff continued going through the housing unit another inmate stated he was not feeling well. The inmate who reported not feeling well tested positive. There was some indication that other inmates on the housing unit were without taste or smell, so staff went back around, asking specifically about taste and smell. When staff talked to Green again, he thought he might have chills.  As such, Green was tested, and it came back positive. Green was offered the vaccine and refused and afterwards he reported potential symptoms and tested positive.

II.   **Green's Request for a Sentence Reduction.**

Green is incarcerated at USP Lewisburg in Lewisburg,
Pennsylvania.  That institution currently has 64 inmates and 25 staff
members that are positive for COVID-19.  Federal Bureau of Prisons,
*COVID-19 Cases*, *at* https://www.bop.gov/coronavirus/.  There has been
zero deaths and 119 inmates, and 36 staff members have recovered.  *Id*.
Green, who himself tested positive for the COVID-19 virus, is one of the
inmates in the statistics.

On or about September 23, 2020, Green filed a request for
compassionate release with the warden at USP Lewisburg.  Ex. 2.  The
warden denied Green's request on September 30, 2020.  Ex. 3.

On November 9, 2020, Green filed a motion with this Court
seeking compassionate release in 1:11-CR-00361.  Doc. 267.  The same
day, the Court appointed the Federal Public Defender' Office and
ordered counsel to determine if Green is eligible for relief and if so, file
an appropriate motion.  Doc. 268.  Over two months later, on January
19, 2021, a motions and brief in support was filed in each of Greens
cases.  1:11-CR-00361 Doc. 270 and 271 and 1:12-CR-00009 Doc. 440

and 441.  The Court ordered the government to file an expedited response in seven days (Docs. 272 and 442).

In his motion, Green claims he is "entitled" to a reduction in his sentence due to a change in the law and the "extraordinary risks" he faces due to the COVID-19 outbreak.  Docs. 441, p.4.   In his brief, Green states that he was diagnosed with human leukocyte antigen (HLA) and claims he is obese.  Doc. 441, p.2.

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to

the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the

reduction is consistent with this policy statement." USSG § 1B1.13.[2]

The policy statement includes an application note that specifies

the types of medical conditions that qualify as "extraordinary and

compelling reasons." First, that standard is met if the defendant is

"suffering from a terminal illness," such as "metastatic solid-tumor

cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease,

[or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the

standard is met if the defendant is:

> (I) suffering from a serious physical or medical
> condition,
> (II) suffering from a serious functional or cognitive
> impairment, or
> (III) experiencing deteriorating physical or mental
> health because of the aging process,

---

[2] The policy statement refers only to motions filed by the BOP Director.
That is because the policy statement was last amended on November 1,
2018, and until the enactment of the First Step Act on December 21,
2018, defendants were not entitled to file motions under § 3582(c). *See*
First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194,
5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command
that any sentence reduction be "consistent with applicable policy
statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii),
and the lack of any plausible reason to treat motions filed by defendants
differently from motions filed by BOP, the policy statement applies to
motions filed by defendants as well.

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).  There is no basis for compassionate release for an individual who if sentenced on a later date might have received a lower sentence due to a change in the law.

## Arguments

This Court should deny Green's motion for a reduction in his sentence with prejudice on either of two independently sufficient grounds. First, Green has not established that "extraordinary and compelling reasons" support a sentence reduction.  Indeed, Green is less at risk having had the virus; second, Green has not met his burden to

show that a reduction is warranted considering the danger that Green

would pose to the community and the relevant § 3553(a) factors.

# I.   GREEN'S MOTION FOR A REDUCTION OF HIS SENTENCE SHOULD BE DENIED ON THE MERITS.

First, Green has not identified "extraordinary and compelling

reasons" for that reduction within the meaning of § 3582(c)(1)(A) and

the Sentencing Commission's policy statement. Second, Green poses a

significant danger to the public and the statutory sentencing factors do

not weigh in favor of his release.

## A.   Green Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

Green's request for a sentence reduction should be denied because

he has not demonstrated "extraordinary and compelling reasons"

warranting release. As explained above, under the relevant provision of

§ 3582(c), a court can grant a sentence reduction only if it determines

that "extraordinary and compelling reasons" justify the reduction and

that "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The

Sentencing Commission's policy statement defines "extraordinary and

14

compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not

generalized threats to the entire population.  As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020);; *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[3]  To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the

---

[3] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

Green has not identified a medical condition that falls within one of the categories specified in the policy statement's application note with the exception of obesity.  While Green claims to have Spondylopathy, the disease has not been exacerbated by the COVID-19 virus.  In fact, Green 's medical records show he is being treated for his medical conditions.  Ex. 1.  Even if Green is considered obese, which the Government disputes as the medical records are devoid of any such statement or finding. Green can control his weight. An accurate body mass index (BMI) cannot be calculated simply by height, weight and age.  Nonetheless, to grant compassionate release based upon obesity

would encourage every like-minded inmate to literally eat his or her way out of prison.  If Green cannot control his weight (if obese and not just muscular) than perhaps he could receive a low-calorie diet and have his access to the commissary restricted.

Additionally, Green tested positive for COVID-19 and except for mild chest congestion was asymptomatic, despite his claim of obesity and Spondylopathy.  Ex. 1, p.1.  As such, any claim that his medical conditions are exacerbated by his infection with the virus is disingenuous in the very best light.

Further, even if one can get COVID-19 again, which is in dispute, Green will have the same issues if released.  Additionally, prior to testing positive for the virus, Green refused the vaccine.  Ex. 1, p. 44.  COVID-19 is not confined to penal institutions.  COVID-19 exists in the population at large, in every state and in every community.  Further, while some experts say it's possible to get reinfected, it is rare. https://www.cnn.com/2020/10/16/health/coronavirus-reinfections-what-we-know-wellness/index.html.  And, the most telling is that he has had only minimal reaction to the virus, so it is very likely even if he

contracts the virus again that he will be asymptomatic.  For these reasons, Green has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c). The motion should be denied.

**B.     Green Still Poses a Significant Danger to the Safety of the Community and the § 3553(A) Factors Strongly Weigh Against His Release.**

Alternatively, Green's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.

At the present time, it is apparent that, but for the COVID-19 pandemic, Green would present no basis for compassionate release. He does not present any medical issues warranting release and even if he did, his medical issues do not present any impediment to his ability to provide self-care in the institution.  The only question, then, is whether the risk of COVID-19 changes that assessment.

Green is not entitled to relief. This Court must consider all pertinent circumstances, including the 3553(a) factors, and possible

danger to the community. At present, the facility where Green is housed is engaged in strenuous efforts to protect inmates against the spread of COVID-19 and would act to treat any inmate who does contract COVID-19, which they are currently doing for Green.

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Green would pose a danger to public safety if released. This Court should deny a sentence reduction on that basis alone.  Green was convicted of numerous counts of armed bank robbery and using a firearm during a crime of violence.  PSR, May 1, 2013.  Green committed these armed bank robberies following two convictions for criminal conspiracy to commit robbery in 2002, one where he robbed a Pizza Hut restaurant at gunpoint (PSR ¶ 51) and the other where he robbed a Turkey Hill Minit Market at gunpoint.  PSR 52.  His parole

was revoked in 2008 when he assaulted and punched federal agents. PSR ¶ 54.  He committed the instant offenses while on state parole. Further, Green had three disciplinary actions while incarcerated.  The first one was for engaging in sexual acts.  The second was for interfering with taking count and the third was for being insolent to a staff member.    Green clearly did not learn a lesson or change his ways.

In addition, the § 3553(a) factors strongly disfavor a sentence reduction. Green was involved in a series of violent crimes and accepted no responsibility for his conduct.  He has served only a small fraction of his sentence, approximately 6%.  This Court determined that his aggregate sentence of 1390 months' imprisonment was appropriate at the time of sentencing.

Moreover, the factors militating against a sentence reduction outweigh Green's asserted concerns related to COVID-19.  Even if this Court concludes (contrary to the argument set forth in the previous section) that Green has established "extraordinary and compelling reasons" for a sentence reduction based on the risk of contracting

COVID-19 again, Green has not established that he would be less vulnerable to COVID-19 if he were released.

Accordingly, considering Green's record and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

## Conclusion

For these reasons, this Court should deny Green's motion for a sentence reduction on the merits.

<div style="margin-left: 40%;">

Respectfully submitted,

BRUCE D. BRANDLER
Acting United States Attorney

</div>

Dated:  January 26, 2021

<div style="margin-left: 40%;">

s/ Daryl F. Bloom
DARYL F. BLOOM
Assistant United States Attorney
Daryl.Bloom@USDOJ.gov
PA 73820

228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania 17108
(717) 221-4482
(717) 221-2246, *facsimile*

</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal Nos.: 1:11-CR-361 and 1:12-CR-9 |
| v. | (Judge Conner) |
| **TRISTAN GREEN**, Defendant. | (electronically filed) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.  That on this Tuesday, January 26, 2021, he served a true and correct copy of the foregoing

**Government's Response to Defendant's Motion
to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)**

by sending a copy to the address stated below:

Addressees:
Quin Sorenson
Quin_Sorenson@fd.org

January 26, 2021

s/ Daryl F. Bloom
Daryl F. Bloom
Assistant United States Attorney